1   FENNEMORE CRAIG, P.C.
    Douglas C. Northup (Admitted *Pro Hac Vice*)
2   2394 E. Camelback Road, Suite 600
    Phoenix, Arizona  85016-3429
3   Telephone:  (602) 916-5000
    Facsimile:  (602) 916-5999
4   Email:  dnorthup@fclaw.com

5   FENNEMORE CRAIG, P.C.
    Karl L. Nielson (Nevada Bar No. 5082)
6   300 South Fourth Street, Suite 1400
    Las Vegas, Nevada  89101
7   Telephone:  (702) 692-8000
    Facsimile:  (702) 692-8099
8   Email:  knielson@fclaw.com

9   *Attorneys for Defendants*
    *BP West Coast Products, LLC, Tesoro Refining &*
10  *Marketing Company, LLC, Treasure Franchise*
    *Company, LLC, Jeff Cary, Derek Tomita, and*
11  *Michael Glassman*

12                  UNITED STATES DISTRICT COURT

13                        DISTRICT OF NEVADA

14  NEVADA WEST PETROLEUM, LLC, a          No. 2:15-cv-01684-APG-(PAL)
    Nevada limited liability company;
15  QARAMAN SUNSET / DECATUR, LLC,  a
    Nevada limited liability company; WASEF    **AGREED ORDER ESTABLISHING**
16  QARAMAN, LLC, a Nevada limited liability   **ELECTRONIC DOCUMENT**
    company; and QARAMAN MESQUITE,             **PRODUCTION PROTOCOL**
17  LLC,

18                   Plaintiffs,

19          v.

20  BP WEST COAST PRODUCTS, LLC, a
    Delaware limited liability company; TESORO
21  REFINING & MARKETING COMPANY,
    LLC, a Delaware limited liability company;
22  TREASURE FRANCHISE COMPANY,
    LLC, a Delaware limited liability company;
23  JEFF CARY, an individual; DEREK
    TOMITA, an individual; and MICHAEL
24  GLASSMAN, an individual,

25                   Defendants.

26

FENNEMORE CRAIG, P.C.      11292342/035357.0004
      PHOENIX

This matter has been brought before the Court for the entry of this Order establishing a protocol for the production of documents in this matter.

**IT IS ORDERED AS FOLLOWS:**

**A.  Scope**

1.     The procedures and protocols outlined herein govern the production and preservation of Discoverable Electronic Information (as defined below) during the pendency of this litigation as described in Federal Rules of Civil Procedure 26, 33, and 34.

2.     The Parties are aware of the importance the Court places on cooperation and commit to cooperate in good faith throughout this case.

3.     As used in this Agreed Order, the term "Discoverable Electronic Information" means discoverable documents and data existing in electronic form consistent with Fed. R. Civ. P. 34(a), including e-mail, writings, drawings, graphs, charts, photographs, sound recordings, images, and other data or data compilations stored in any medium from which information can be obtained either directly or, if necessary, after conversion by the responding party into a reasonably usable form, and other reasonably accessible electronically stored information relevant to the claim(s) or defense(s) of any party subject to discovery pursuant to Fed. R. Civ. P. 26(b)(1).

**B.  Identification of Responsive Data**

1.     Discoverable Electronic Information which is neither privileged nor otherwise protected shall be timely reviewed and produced in accordance with the guidelines herein.

2.     After receiving requests for document production, the producing party shall conduct a reasonable and good faith search for responsive documents and electronically stored information.  A producing party will disclose to a requesting party the existence of those sources of electronically stored information that it believes contain responsive information and that are not reasonably accessible, if any. The parties will confer to the extent necessary concerning such information, but a producing party shall not have an obligation to search or produce from sources of electronically stored information that it in good faith identifies as not reasonably accessible

1   because of undue burden or cost in accordance with Fed. R. Civ. P. 26(b)(2) and no such

2   obligation will exist unless and until a showing of good cause is made by the requesting party

3   pursuant to Fed. R. Civ. P. 26(b)(2), considering the limitations of Fed. R. Civ. P. 26(b)(2)(C).

4   The producing parties retain their right to argue that certain sources of electronically stored

5   information are not reasonably accessible because of undue burden or cost.

6         No party shall have a duty to search or produce common system files and application

7   executable files and each party may use its best efforts to filter out common system files and

8   application executable files by using a commercially reasonable hash identification process.  Hash

9   values that may be filtered out during this process are located in the National Software Reference

10  Library ("NSRL") NIST hash set list.  Additional culling of system file types based on file

11  extension may include, but are not limited to: WINNT, LOGS, DRVS, MP3, C++ Program File

12  (c) , C++ Builder 6 (cpp), Channel Definition Format (cdf), Creatures Object Sources (cos),

13  Dictionary file (dic), Executable (exe), Hypertext Cascading Style Sheet (css), JavaScript Source

14  Code (js), Java Script Object Notation (json), Label Pro Data File (IPD), Office Data File

15  (NICK), Office Profile Settings (ops), Outlook Rules Wizard File (rwz), Scrap Object, System

16  File (dll), Temporary File (tmp), Windows Error Dump (dmp), Windows Media Player Skin

17  Package (wmz), Windows NT/2000 Event View Log file (evt), Python Script files (.py, .pyc,

18  .pud, .pyw), and Program Installers.

19        No party shall have the duty to search for or produce the following categories of ESI,

20  except when any particular file(s) is (are) already known to be relevant, are identified or attached

21  to a text file and are specifically requested by a party:

22        1)     audio, video, or audio-visual files (.wav, .mp3, .avi, .swf, etc.);

23        2)     telephonic recordings;

24        3)     unreadable or corrupt files;

25        4)     Deleted, slack, fragmented, or unallocated data;

26        5)     RAM or other ephemeral data;

6)      On-line access data such as temporary internet files, history, cache, cookies, etc.;

7)      Data in metadata fields that is updated frequently and automatically;

8)      Backup data that is substantially duplicative of data more accessible elsewhere;

9)      Other forms of ESI whose preservation requires extraordinary affirmative measures that would be unreasonable to require and that the party does not utilize in the ordinary course of business;

10)    Server, System, or network logs; and

11)    ESI sent to phones or mobile devices, provided that copies of all such data is routinely saved elsewhere (e.g., server, desktop, laptop, cloned, etc.).

3.    **Metadata.**  Metadata is (i) information embedded in a Native File that is not ordinarily viewable or printable from the application that generated, edited, or modified such native file; and (ii) information generated automatically by the operation of a computer or other information technology system when a native file is created, modified, transmitted, deleted or otherwise manipulated by a user of such system. Metadata is a subset of ESI.

To the extent that any of the following metadata fields are available for an electronic document, the producing party will produce those metadata fields to the requesting party:  (1) beginning bates number; (2) ending bates number; (3) subject line; (4) date sent; (5) sender/author; (6) all recipient(s); (7) copyee(s); (8) blind copyee(s); (9) creation date; (10) last modified date; (11) custodian; (12) file extension; (13) md 5 hash; (14) page count; and (15) file path.  For paper documents, the metadata set forth in (1), (2), and (11) shall be produced to the extent available.

4.    **Search Terms.**  The parties shall meet and confer on search terms and/or categories of documents to be used to search custodian emails and custodian hard drives to identify electronic documents that will be reviewed for possible production.

5.    **Custodians.**  The parties shall meet and confer to identify the custodians whose e-mails, social media networks, and hard drives and/or network drives will be searched using the

agreed upon search terms and/or categories of documents identified in paragraph B.4. above to identify electronic documents that will be reviewed for possible production.

6. **Date Range.** The parties shall meet and confer on the date range(s) to be used to identify electronic documents that will be reviewed for possible production.

7. **Duplicate Production Not Required.** A party producing Discoverable Electronic Information in electronic form need not produce the same document in paper format. Where a party has more than one identical copy of an electronic document (i.e., the documents are visually the same and contain matching hash values), the producing party need only produce a single copy of that document. Furthermore, the parties are not required to produce multiple instances of an electronic message sent to multiple recipients, provided that all of the recipients (including "blind carbon copy" recipients) can be identified from documents or electronically stored information produced pursuant to this protocol. Upon agreement of the parties, ESI may be produced in paper format in lieu of production in electronic format where such production would be more practical or cost efficient. A party need not re-produce in this Litigation any document it has already produced in any related action, absent agreement between the parties, or upon order of this Court upon good cause shown.

8. **Attachments to E-Mails.** Notwithstanding the provisions in paragraph B.7 above, attachments to e-mails shall not be eliminated from the parent e-mail regardless of whether or not the attachment is a duplicate of another electronic document.

### C. General Instructions

1. **Document Production Format.** The following provisions shall generally govern the production format and procedure for Discoverable Electronic Information other than data extracted from databases or mainframes or other similar computers.

a. <u>Format</u>. All Discoverable Electronic Information, other than the data extracted from databases, mainframes, or other similar computers, shall be produced electronically in a single-page Group 4 TIFF image that reflects how the source document would

have appeared if it were printed via an attached printer.

b. <u>Spreadsheets</u>.   Spreadsheets shall be produced in native format unless redacted, in which instance, spreadsheets will be produced in TIFF.

c. <u>OCR Text Files</u>. A commercially acceptable technology for optical character recognition ("OCR") shall be used for all scanned, hard copy documents. OCR text shall be provided as a document-level OCR text file for each document (including electronic documents), and the filename itself should match its respective TIFF filename. The text files will not contain the redacted portions of the documents.

d. <u>Appearance</u>.   Subject to appropriate redaction, each document's electronic image shall convey the same information and image as the original document.   If a receiving party believes that any document(s) presents imaging or formatting problems, it may identify the document(s) and request that the parties meet and confer in an attempt to resolve the problems.

e. <u>Load files</u>.   The producing party shall provide a load file to accompany the images.   The format of the load file shall be determined by agreement consistent with the programs that are in use by the parties' attorneys' respective law firms. The load file shall contain the file name, including the path (directory/subdirectory) where the file is located.   The load file must also include the following fields:  Begin Bates, End Bates, Begin Bates Attach, End Bates Attach, and Page Count.

f. <u>Document Unitization</u>.   If a document is more than one page, the unitization of the document and any attachments and/or affixed notes shall be maintained as it existed in the original file or computer of the producing party or shall be documented in a load file or otherwise electronically tracked.

g. <u>Color</u>.   If an original document contains color, the producing party shall honor reasonable requests for either the production of an original document for inspection and copying, or for production of a color image of the document. The requesting party agrees to pay for reasonable costs associated with the color scanning and production of color images of

1  documents already produced.

2       h.  "Bates Numbering."  Each page of a produced document produced in TIFF

3  format shall have a legible, unique page identifier (Bates Number) electronically "burned" onto

4  the image at a location that does not obliterate, conceal or interfere with information from the

5  source document.  There shall be no other legend or stamp placed on the document image unless

6  a document qualifies for confidential treatment pursuant to the terms of the Protective Order in

7  this matter or has been redacted in accordance with applicable law or Court order.  In the case of

8  confidential materials or materials redacted in accordance with applicable law or Court order, a

9  designation may be "burned" onto the document's image at a location that does not obliterate or

10  obscure information from the source document.

11       i.  File Naming Conventions.  Each TIFF image file shall be named with the

12  Bates Number corresponding to the number assigned to the document page contained in that

13  image.   Any native file shall be renamed to include a single bates number along with the original

14  file name.

15       j.  Production Media.  The producing party shall produce documents on CD-

16  ROM, DVD, external hard drive (with standard PC compatible interface), or such other readily

17  accessible computer or electronic media as the parties may hereafter agree upon (the "Production

18  Media").  Each piece of Production Media shall be assigned a production number or other unique

19  identifying label corresponding to the date of the production of documents on the Production

20  Media (e.g., "Plaintiffs' Production March 16 2016") as well as the sequence of the material in

21  that production wave (e.g. "-00001", "-00002").   For example, if the production comprises

22  document images on three DVDs, the producing party may label each DVD in the following

23  manner "Plaintiffs' Production March. 15 2016-00001", "Plaintiffs' Production March 15 2016-

24  00002", "Plaintiffs' Production March 15 2016-0003".   Additional information that shall be

25  identified on the physical Production Media includes:  (1) text referencing that it was produced in

26  Nevada West Petroleum, LLC, et al. v. BP West Coast Products, et. al., Case No. 2:15-cv-01684-

APG-(PAL); (2) the Bates Number range of the materials contained on the Production Media; and (3) the confidentiality designation(s) if any of the documents qualify for confidential treatment pursuant to the terms of the Protective Order in this matter.

k.       <u>Security, Write Protection, and Preservation</u>.  All computer media that is capable of write protection should be write-protected before production.   Any copies of documents from the production made for internal use shall also be encrypted or stored in a computer system that requires a password to access.   All parties shall make reasonable efforts to ensure that any productions made are free from viruses and provided on encrypted media for submission.

l.       <u>Original Documents</u>.  For all documents produced in this proceeding, the producing party shall retain the original hard-copy or electronic documents in their native format (together with the means to access, retrieve, and view such documents). The producing party shall make reasonable efforts to maintain the original native electronic source documents in a manner so as to preserve the metadata associated with these electronic materials in the event review of such metadata becomes necessary.

2.       **Production Format for Information from Databases.**  The following provisions shall generally govern the production format and procedure for Discoverable Electronic Information extracted from databases, mainframes, or other similar computers.

a.       <u>Production Information</u>.  Electronic records and computerized information from databases, mainframes, and other similar computers must be produced in an intelligible format or together with a technical description of the system from which they were derived sufficient to permit rendering the records and information intelligible.

b.       <u>Data Production Format</u>.   To the extent that Discoverable Electronic Information is produced from a database residing on a mainframe or other similar computer, it shall be provided in a report or a reasonably usable and exportable electronic file in a format on which the parties agree.

3.      **Privilege Logs.**  A party withholding documents based any claim of privilege or work product will produce a privilege log within sixty (60) days after the completion of its document production.  When there is a chain of privileged e-mails, the producing party need only include one entry on the privilege log for the entire e-mail chain, and need not log each e-mail contained in the chain separately.  The parties may modify the deadlines for production of the privilege logs by agreement.  Communications between any party and its counsel occurring after September 1, 2015 does not need to be included on the privilege log.

4.      **Inadvertent Disclosures.**  Should any party inadvertently produce Discoverable Electronic Information subject to a claim of privilege or work product, the producing party shall notify the receiving party in writing within a reasonable time after discovering the inadvertent production, and the receiving party shall promptly return or destroy the specified information and all copies and confirm in writing that the specified information and all copies have been returned and/or destroyed.  Thereafter, the party claiming privilege must include the document(s) in question on its privilege log and must preserve the document(s).  Pursuant to the Federal Rule of Evidence 502(d), any inadvertent disclosure of Discoverable Electronic Information subject to a claim of privilege or work product shall not constitute a waiver of such privilege or work product, either in this case or in any other federal or state proceeding.

5.      **Confidentiality Designation.**  Responsive documents produced shall be stamped with the appropriate confidentiality designation in accordance with the Protective Order in this case.   Each responsive document produced in native format will have its confidentiality designation identified in the filename of the native file.

## D.  Timing and Sequencing of Electronic Discovery

Any party under an obligation to produce Discoverable Electronic Information shall commence the production of such Discoverable Electronic Information and proceed with the production of electronic information in a timely manner consistent with time considerations to be developed by the parties.  The parties shall meet and confer to arrange an orderly production of

such Discoverable Electronic Information.

### E.  Exceptions to Protocol

If the forms of production allowed by this protocol present an undue burden or cost for a producing party, the parties shall meet and confer to agree on a reasonable, alternative form of production.  Any party may file a motion to seek individual relief from this protocol.

### F.  Costs of Production

Each party will presumptively bear its own costs of production, but the parties reserve the right to seek cost shifting, and/or to object to any proposed cost-shifting, as appropriate.  Nothing in this Agreed Order is intended or should be interpreted as affecting, in any way, the parties' rights to seek reimbursement for costs associated with the collection, review, and/or production of documents as allowed by law.

### G.  Discovery, Admissibility, and Objections

1.     Nothing in this Agreed Order shall be construed to affect the discoverability or admissibility of any document or data.  All objections to the discoverability or admissibility of any document or data are preserved and may be asserted at the appropriate time.

2.     Nothing in this Agreed Order shall be interpreted to require disclosure of irrelevant information or information protected by the attorney-client privilege, work-product doctrine, or any other applicable privilege or immunity. The parties do not waive any objections as to the production, discoverability, admissibility, or confidentiality of documents and/or Discoverable Electronic Information.

3.     Nothing in this Agreed Order shall preclude a party from objecting to the production of ESI that is not reasonably accessible without undue burden or cost.  Prior to asserting an objection, the responding Party will inform the Requesting Party of the electronic information it is willing to produce, the nature and location of the information claimed to not be reasonably accessible, the reason(s) why the requested production would impose an undue burden or is unreasonably costly, and afford the Requesting Party fourteen (14) calendar days to propose

1    an alternative means of compliance with the request, which could include requesting payment of

2    all or part of the costs of retrieving the information.

3          4.      Nothing in this Agreed Order is intended or should be interpreted as narrowing,

4    expanding, or otherwise affecting the rights of the Parties or third parties to object to a subpoena.

5                                **H.  Third-Party Production**

6          1.      A party that issues a non-party subpoena (the "Issuing Party") shall include a copy

7    of this Agreed Order with the subpoena and state that the parties to the litigation have requested

8    that third-parties produce documents in accordance with the specifications set forth herein.

9          2.      The Issuing Party is responsible for producing any documents obtained under a

10    subpoena to all other parties.

11         3.      The Issuing Party shall produce to all other parties the documents obtained under a

12    subpoena in the format in which such documents are received by the Issuing Party.

13         4.      If the non-party production is not Bates-stamped, the Issuing Party will endorse the

14    non-party production with unique prefixes and Bates numbers prior to producing them to all other

15    parties.

16                                  **I.  Duration**

17         This stipulation and Order shall apply to all Parties that are required to make any

18    production in this action pursuant to Fed. R. Civ. P. 26 and 34 and/or any other applicable rules.

19    This stipulation and Order shall continue in full force and effect until further order of the Court or

20    until this litigation is terminated by a final judgment.

21         **SO ORDERED** this 10th day of March, 2016.

22

23                                UNITED STATES MAGISTRATE JUDGE

24

25

26

FENNEMORE CRAIG, P.C.

PHOENIX

11292342/035357.0004

**APPROVED AS TO FORM AND ENTRY:**

DATED this 4th day of March, 2016.          FENNEMORE CRAIG, P.C.

By:  */s/ Karl L. Nielson*
Douglas C. Northup (Admitted *Pro Hac Vice*)
2394 E. Camelback Road, Suite 600
Phoenix, Arizona  85016-3429
- and -
Karl L. Nielson (NVB No. 5082)
300 South Fourth Street, Suite 1400
Las Vegas, Nevada  89101
*Attorneys for Defendants*

DATED this 4th day of March, 2016.          MORRIS, SULLIVAN, LEMKUL & PITEGOFF

By:  */s/ Christopher A. Turtoz*
Jeffrey I. Pitegoff (NVB No. 005458)
Christopher A. Turtzo (NVB No. 10253)
3770 Howard Hughes Parkway, Suite 170
Las Vegas, NV  89169
*Attorneys for Plaintiffs*

FENNEMORE CRAIG, P.C.
PHOENIX

11292342/035357.0004

- 12 -