UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

| | |
|---|---|
| NEVADA WEST PETROLEUM, LLC, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>BP WEST COAST PRODUCTS, LLC, et al.,<br><br>Defendants. | Case No. 2:15-cv-01684-APG-PAL<br><br>**ORDER (1) GRANTING THE DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ON LIABILITY, (2) DENYING THE DEFENDANTS' MOTION ON DAMAGES AS MOOT, AND (3) DENYING PLAINTIFF NEVADA WEST PETROLEUM, LLC'S MOTION FOR SUMMARY JUDGMENT**<br><br>(ECF Nos. 72, 73, 76) |

The plaintiffs are franchisees operating ARCO "ampm" brand gas stations at various locations in Las Vegas. The plaintiffs allege the defendants (the franchisors) engaged in various acts to undermine the franchise relationship, ultimately resulting in the plaintiffs selling their gas stations and terminating the construction of a proposed gas station. The plaintiffs assert the defendants (1) violated the Petroleum Marketing Practices Act (PMPA) by constructively terminating the franchises, (2) breached the franchise agreements, (3) breached the covenant of good faith and fair dealing implied in the franchise agreements, and (4) engaged in a civil conspiracy to force the plaintiffs out of business.

The defendants move for summary judgment on each of the plaintiffs' claims, arguing the plaintiffs cannot show liability or damages. The plaintiffs oppose, and plaintiff Nevada West Petroleum, LLC (Nevada West) moves for summary judgment in its favor on its PMPA claim regarding the termination of the planned gas station. The parties are familiar with, and generally agree on, the facts in this case so I will not repeat them here except where necessary. I grant the defendants' motion on liability, deny their motion on damages as moot, and deny Nevada West's motion.

/ / / /

## I. ANALYSIS

Summary judgment is appropriate if the movant shows "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a), (c). A fact is material if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). An issue is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

The party seeking summary judgment bears the initial burden of informing the court of the basis for its motion and identifying those portions of the record that demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The burden then shifts to the non-moving party to set forth specific facts demonstrating there is a genuine issue of material fact for trial. *Fairbank v. Wunderman Cato Johnson*, 212 F.3d 528, 531 (9th Cir. 2000). I view the evidence and reasonable inferences in the light most favorable to the non-moving party. *James River Ins. Co. v. Hebert Schenk, P.C.*, 523 F.3d 915, 920 (9th Cir. 2008).

### A. PMPA

The PMPA "establishes minimum federal standards governing the termination and nonrenewal of petroleum franchises." *Mac's Shell Serv., Inc. v. Shell Oil Prod. Co. LLC*, 559 U.S. 175, 178 (2010). Under the PMPA, "a franchisor may terminate a franchise during the term stated in the franchise agreement . . . only if the franchisor provides written notice and takes the action in question for a reason specifically recognized in the statute." *Id.* (internal quotation marks omitted, citing 15 U.S.C. §§ 2802, 2804). "If a franchisor fails to comply with the requirements of section 2802, 2803, or 2807 of [the Act], the franchisee may maintain a civil action against such franchisor." 15 U.S.C. § 2805(a).

Here, the defendants did not terminate the franchises. Rather, the plaintiffs assigned their operating gas stations to third parties and plaintiff Nevada West abandoned the proposed gas station on Boulder Highway. *See* ECF Nos. 44-47, 50. The plaintiffs thus rely on a constructive termination theory, arguing that the defendants took various actions to force them out of business.

/ / / /

1  Neither the Supreme Court nor the Court of Appeals for the Ninth Circuit have held that a PMPA claim can be based on a constructive termination theory. *See Mac's Shell Serv., Inc.*, 559 U.S. at 182 n.4 (leaving the question "for another day"); *Portland 76 Auto/Truck Plaza, Inc. v. Union Oil Co. of Cal.*, 153 F.3d 938, 948 (9th Cir. 1998) (assuming without deciding "that constructive termination may give rise to a claim under the Act") (citing *Little Oil Co. v. Atl. Richfield Co.*, 852 F.2d 441, 445 (9th Cir. 1988)). However, if such a claim exists, the franchisee must show the franchisor's conduct "forced an end to the franchise." *Mac's Shell Serv., Inc.*, 559 U.S. at 182; 15 U.S.C. § 2805(c) (providing that in a civil suit the "franchisee shall have the burden of proving the termination of the franchise or the nonrenewal of the franchise relationship"). Further, the franchisee must show the franchisor's conduct either breached the "franchise obligations" or violated state law. *Portland 76 Auto/Truck Plaza, Inc.*, 153 F.3d at 948; *see also Apr. Mktg. & Distrib. Corp. v. Diamond Shamrock Ref. & Mktg. Co.*, 103 F.3d 28, 30 (5th Cir. 1997) ("Those courts that have recognized constructive termination under the PMPA have indicated that there is no constructive termination absent a breach of the franchise.").

Even assuming a constructive termination claim exists under the PMPA, and viewing the facts in the light most favorable to the plaintiffs, no reasonable jury could find in favor of the plaintiffs. The plaintiffs have not identified a breach of the franchise agreements and they concede the defendants literally complied with the franchise agreements' terms. *See* ECF Nos. 72-2 at 13, 18-20, 27-29, 59; 72-2 at 16; 82 at 23 ("It may be true that the Defendants did not violate any particular term of the franchise agreements."). As discussed in more detail below, the plaintiffs also have not raised an issue of fact that the defendants violated the covenant of good faith and fair dealing implied in the franchise agreements. Nor have they asserted or shown a violation of state law. Consequently, I grant the defendants' summary judgment motion and deny Nevada West's motion on this claim.

/ / / /

/ / / /

/ / / /

### B. Breach of Contract[1]

Under Nevada law, a plaintiff asserting a breach of contract claim must "show (1) the existence of a valid contract, (2) a breach by the defendant, and (3) damage as a result of the breach." *Saini v. Int'l Game Tech.*, 434 F. Supp. 2d 913, 920-21 (D. Nev. 2006) (citing *Richardson v. Jones*, 1 Nev. 405, 405 (1865)).

The defendants are entitled to summary judgment on this claim because, as discussed above, the plaintiffs have not identified a breach and they concede the defendants literally complied with the terms of the franchise agreements. To the extent this claim is based on the alleged modification of the Retalix Agreements to reduce the price and allow for monthly payments for the point-of-sale system and related equipment, the defendants assert the claim is barred by the statute of frauds. There is no evidence of a writing memorializing this alleged modification of the purchase price, which was at least $18,000 (by the plaintiffs' allegation of a reduced price). *See* Nev. Rev. Stat. § 104.2201; ECF Nos. 72-2 at 50, 62-63; 72-3 at 18-19. The plaintiffs have not identified an exception to the statute of frauds nor argued why it should not apply in this case. I therefore grant the defendants' motion on this claim.

### C. Breach of the Implied Covenant of Good Faith and Fair Dealing

Under Nevada law, "an implied covenant of good faith and fair dealing exists in all contracts." *A.C. Shaw Const., Inc. v. Washoe Cty.*, 784 P.2d 9, 10 (Nev. 1989) (emphasis omitted). "Where the terms of a contract are literally complied with but one party to the contract deliberately countervenes the intention and spirit of the contract, that party can incur liability for breach of the implied covenant of good faith and fair dealing." *Hilton Hotels Corp. v. Butch Lewis Prods., Inc.*, 808 P.2d 919, 922-23 (Nev. 1991). Alternatively phrased, "[w]hen one party

---

[1] The defendants argue the plaintiffs' state law claims are preempted by the PMPA. To the extent these claims are based on the alleged constructive termination of the franchises, the claims would be preempted if state law is inconsistent with PMPA's requirements. *See Simmons v. Mobil Oil Corp.*, 29 F.3d 505, 511-12 (9th Cir. 1994); 15 U.S.C. § 2806(a). To the extent the claims seek damages flowing from the alleged misconduct, rather than from a constructive or actual termination, the claims are not preempted. *Id.* at 512. I need not evaluate the preemption issue because the plaintiffs' claims fail on the merits.

performs a contract in a manner that is unfaithful to the purpose of the contract and the justified expectations of the other party are thus denied, damages may be awarded against the party who does not act in good faith." *Id.* at 923. Whether the alleged breaching party's "actions fall outside the reasonable expectations of the [other] party is determined by the various factors and special circumstances that shape these expectations." *Id.* at 924. Whether a party acted in good faith is a question of fact. *A.C. Shaw Const., Inc.*, 784 P.2d at 11.

No genuine dispute remains on this claim. The plaintiffs' claim is based on the defendants' (1) refusal to put the gas stations back on credit to pay for fuel instead of requiring them to pre-pay for fuel, (2) overcharging for Retalix and requiring the plaintiffs to pay for the Retalix system in full instead of through monthly payments; (3) refusing to refund the franchise fee for the planned gas station, (4) not giving extensions to build the planned gas station, and (5) not giving assurances that credit would be approved for the planned gas station.

First, viewing the facts in the light most favorable to the plaintiffs, they could have no justifiable expectation to be able to pay for fuel on credit. Section 7 of the Contract Dealer Gasoline Agreement provides that the defendants in their "sole discretion" may "from time to time extend credit to [plaintiffs] in whatever amounts on whatever terms [the defendants[2]] alone select[]." *See, e.g.*, ECF No. 72-5 at 4. It is undisputed that the plaintiffs' stations started out paying on credit and those stations that subsequently had to pre-pay for fuel were required to do so only after their payments were untimely or did not clear due to insufficient funds. *See* ECF Nos. 72-2 at 71, 160, 170-72, 218-21, 238-40; 32, 34, 35.[3]

Second, the plaintiffs had no justifiable expectation that they would not have to pay for the Retalix system in full instead of monthly payments or that they would have to pay less for the

---

[2] The franchise agreements originally were between the plaintiffs and defendant BP West Coast Products LLC (BP). *See, e.g.*, ECF Nos. 72-5; 72-6; 72-7; 72-8; 72-9. Defendant Tesoro Refining & Marketing Company, LLC was BP's successor on the franchise agreements. ECF Nos. 1 at 4; 18 at 3.

[3] The Boulder Highway station was never built so it was never on pre-pay or credit. The Cheyenne station was never converted to pre-pay status.

system. The Retalix Agreement states that the Retalix system would cost between $37,500 and $47,500, and that the franchisee was required to pay the price of the Retalix system within 30 days of notice of the total amount due. ECF No. 72-15 at 2-3. The Mini Market Agreement likewise requires a nonrefundable lump sum payment within 30 days following installation. ECF No. 72-14 at 11. As discussed above with respect to the breach of contract claim, the plaintiffs have not argued that the alleged modification of the Retalix Agreement falls within an exception to the statute of frauds.

Third, the plaintiffs had no justifiable expectation of receiving a refund of the franchise fee for the planned gas station. The Mini Market Agreement provides that the franchise fee is not refundable absent circumstances that the plaintiffs do not argue are present here. ECF No. 72-14 at 8-9.

Fourth, the plaintiffs' justifiable expectations regarding extensions to build the planned gas station were met and, in some instances, exceeded. Under the Mini Market Agreement, where the station at issue is new construction (like the proposed Boulder Highway station was), construction must begin within 18 months and be completed within 24 months. ECF No. 72-14 at 6. The franchisee may request a 12-month extension, which the defendants "may grant in [their] sole discretion." *Id.* Nevada West was granted a 12-month extension. ECF No. 72-39. The defendants granted an additional extension, even though not contractually required to do so. ECF No. 72-40. Tesoro was willing to grant additional time after that. ECF Nos. 72-41, 72-42. Nevada West tried to condition its acceptance of this last extension with the additional proposed term that credit be approved for construction of the site. ECF No. 72-42 at 3. Tesoro rejected that additional term, but again gave Nevada West an opportunity to accept an extension of the construction deadlines. ECF No. 72-43. Nevada West did not do so. Instead, Nevada West executed a deed in lieu of foreclosure, surrendering the Boulder Highway property to the lender. ECF No. 72-51. No reasonable jury could find the defendants breached the spirit of the agreement by giving Nevada West more extensions than were contractually required.

/ / / /

1  Finally, no reasonable jury could find the defendants breached the covenant by not giving
2  assurances that credit would be approved for the planned gas station. The defendants' offer to
3  consider extending an $800,000 construction loan for the Boulder Highway location was
4  contingent on, among other things, "[f]inal approval of the Loan by [the defendants'] appropriate
5  credit officers or committees." ECF No. 72-30 at 2. Moreover, the defendants reserved the right
6  to revoke final approval of the loan "in the event Borrower or any guarantor of the Loan shall
7  suffer a material adverse change in its business condition (whether financial or otherwise),
8  operations, performance, properties or prospects, in each case arising between the date of such
9  approval and the recordation of [the defendants'] deed of trust." *Id.* Nevada West agreed to these
10 terms. *Id.* at 3. The defendants' refusal to deviate from these terms and give final credit approval
11 earlier than the parties agreed does not breach the covenant of good faith and fair dealing.
12 Further, Nevada West was not required to obtain a loan from the defendants to construct the gas
13 station. ECF No. 72-2 at 26, 32. To the extent Nevada West found these terms onerous, it could
14 have sought financing elsewhere and still completed the project.

15 No genuine dispute remains on this claim. I therefore grant the defendants' summary
16 judgment motion on the plaintiffs' claim for breach of the covenant of good faith and fair dealing.

17 **D. Civil Conspiracy**

18 Under Nevada law, to establish a civil conspiracy claim, a plaintiff must show (1) the
19 commission of an underlying tort; and (2) an agreement between the defendants to commit that
20 tort. *Jordan v. State ex rel. Dep't of Motor Vehicles & Pub. Safety*, 110 P.3d 30, 51 (Nev. 2005)
21 (stating that "an underlying cause of action for fraud is a necessary predicate to a cause of action
22 for conspiracy to defraud"), *abrogated on other grounds by Buzz Stew, LLC v. City of N. Las
23 Vegas*, 181 P.3d 670, 672 n.6 (Nev. 2008). Because the plaintiffs have not raised a genuine
24 dispute as to an underlying tort, I grant the defendants' motion on this claim.

25 Moreover, the plaintiffs have not presented evidence that the defendants conspired with
26 any third party to drive the plaintiffs out of business. Rather, according to the affidavits the
27 plaintiffs present, the defendants' personnel announced to third parties that they were severing all
28

relations with one of the plaintiffs' business partners and that the Boulder Highway project would not go forward. ECF Nos. 82-30 at 2; 82-31 at 2.  These affidavits do not state that the defendants' personnel conspired with outside third parties in making that decision or in engaging in any particular acts.  "Agents and employees of a corporation cannot conspire with their corporate principal or employer where they act in their official capacities on behalf of the corporation and not as individuals for their individual advantage." *Collins v. Union Fed. Sav. & Loan Ass'n*, 662 P.2d 610, 622 (Nev. 1983).  There is no evidence that the defendants' employees were acting as individuals for their individual benefit.  I therefore grant the defendants' motion with respect to this claim.

Because the defendants are entitled to summary judgment on liability, there is no need to address their motion for judgment on the plaintiffs' damages claims. ECF No. 73.  This also means that Nevada West cannot prevail on its motion for summary judgment. ECF No. 76.  I deny both of those motions.

## II. CONCLUSION

IT IS THEREFORE ORDERED that defendants BP West Coast Products, LLC; Tesoro Refining & Marketing Company, LLC; and Treasure Franchise Company, LLC's motion for summary judgment on liability **(ECF No. 72) is GRANTED**.

IT IS FURTHER ORDERED that defendants BP West Coast Products, LLC; Tesoro Refining & Marketing Company, LLC; and Treasure Franchise Company, LLC's motion for summary judgment on damages **(ECF No. 73) is DENIED as moot**.

IT IS FURTHER ORDERED that plaintiffs Nevada West Petroleum, LLC's motion for summary judgment **(ECF No. 76) is DENIED**.

DATED this 20th day of September, 2017.

ANDREW P. GORDON
UNITED STATES DISTRICT JUDGE